Titus, C. J.
This action was brought on a policy of insurance issued by the defendant on the plaintiff’s horse. The defendant is a mutual live-stock insurance company, with its home office in this city. At the trial term the plaintiff was nonsuited, and the exceptions ordered heard at the general term in the first instance. The policy was issued to the plaintiff October 17, 1893, for $150, and the horse in question was killed December 14,1893. The plaintiff took the required steps to become a member of the defendant company, and paid the premium required by its rules, and received his certificate or policy of insurance. The day after the horse was killed, the plaintiff called at the defendant’s office and got blank proofs of loss, but, at the request of the defendant, deferred presenting his proofs of loss until after the 1st of January, to enable-the defendant to make a better showing of its business. After presenting his proofs of loss, he was notified that they were defective in some particular. The plaintff then caused "them to be corrected, and again presented them; and on the 22d day of January, 1894, the defendant gave a receipt for the proofs of loss, and placed the same on file, and retained them, without objection, until April 25th, when it notified the plaintiff of its refusal to pay, because of the fact that, at the time of making the application for insurance, a chattel mortgage given as collateral security, was on file m the county clerk’s office, and unsatisfied, against the property, and that he had subsequently given another chattel mortgage on this horse without the knowledge or consent of the defendant. In the application for insurance, the plaintiff, in answering the question whether he was the sole owner of the property, free from incumbrance, gave an *372 affirmative answer. This, it is claimed, was such a misrepresentation of a material fact, together with the subsequent incumbrance, as worked a forfeiture of the' policy, and is available to defeat a recovery upon it. It appears that on the 26th or 29th day of December, and after the loss, the defendant became possessed of the knowledge of these incumbrances, and made no objection to paying the loss on that account .until April 25th following. On the 26th day of, December, 1893, the defendant issued a “ mortuary call,” and made an assessment on the policy holders for the payment of losses reported since September 11, 1893, and required the plaintiff to pay his assessment on or before January 15, 1894. One of the losses for which this assessment was made was the plaintiff’s horse in question. On the 15th of January the plaintiff paid the amount of his assessment, which was receipted for by the company on the assessment notice. In his application for insurance, the plaintiff agrees to abide by the constitution and by-laws of the company, and to' conform to its rules and regulations and to the agreement set forth in the certificate of membership, and that a failure to do so forfeits all rights under the certificate issued on such application. One of the by-laws referred to provides that “ in the event of a member incumbering, by bill of sale, mortgage'or other lien, the animal covered by the certificate he holds, without first obtaining the consent of the company in writing, such company shall cause a forfeiture of such certificate.” The certificate of membership provides that “ the holder of this certificate agrees that it may be cancelled if it be found that any willful misrepresentations were made in the application for membership or important information withheld by the applicant” The plaintiff, in his testimony, claims that his statement in the policy that there was no incumbrance on the property was not a willful misrepresentation, but an inadvertence, which did not attract his attention at the time it was made. It is also'claimed by the plaintiff that the defendant has waived the right it concededly had to forfeit and declare invalid the policy by receiving payment for the assessment after it had full knowledge of all of the facts which it is now claimed worked a forfeiture of the policy, and in not canceling the same, and doing other acts after such knowledge, and' that he' should have been permitted to go to the jury upon this question. This presents the only question in the case for consideration.
In reviewing a judgment upon a nonsuit, the plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence given, and to every legitimate inference warranted by the proofs ; and a motion for nonsuit should not be granted unless it appears the plaintiff is not entitled to recover 'after giving him the benefit of the most favorable view that the jury would be warranted in taking of the evidence. McNally v. Insurance Co., 137 N. Y. 389; 50 St. Rep. 680. The defendant being a mutual company, when a person desires to procure insurance he must become a member and pay a certain fee. A certificate of membership is then issued to him, containing a description of the property insured, and the terms and conditions to be com *373 plied with by the insured. It is provided in the certificate that if any willful misrepresentation is made in the application for membership, or important information withheld, the certificate may be canceled. The clause in the certificate of membership and application for insurance (which are in effect the same), authorizing the company to cancel the certificate of insurance for any misstatements, does not ipso facto operate to annul the policy. It is at the option of the company whether it will take advantage of that clause or not, and, until the company takes some affirmative steps manifesting its intent to enforce the condition, no forfeiture results, and the policy remains in force. Titus v. Insurance Co., 81 N. Y. 410.
ISTó action was taken by the company to cancel the policy, but, after it had discovered the fact that the property was encumbered at the time the application was made, it proceeded to collect of the plaintiff the assessment theretofore made for the purpose of paying the plaintiff’s and other losses. The constitution provides that each member shall abide by and conform to all the conditions and agreements made in his certificate of membership, and that a failure to do so shall cause a forfeiture of membership or certificate. The conditions here referred to evidently do not relate to misstatements in the application, because immediately following this is the clause “that the company shall have the right to cancel any certificate of membership or policy obtained by means of misrepresentations,” leaving it optional with the company to cancel or not, as its interest may dictate; and, as it appears no steps .were taken to cancel the policy, it remained in full force until such time as the company should elect to terminate it for a violation of its conditions. The constitution further provides that “the incumbering, by bill of sale, mortgage, or any other lien, of the animal covered by the certificate he holds, without first obtaining the consent of the company in writing, such company shall cause a forfeiture of such certificate.”
In Benninghoff v. Insurance Co., 93 N. Y. 495, the policy contained a clause similar to the one in this certificate and constitution ; and the court, in disposing of the question, said :
“It may be premised that the transfer of the title of the property insured under a policy prohibiting such transfer does not operate ipso facto to annul and destroy the policy, but simply confers upon the defendant the right to have it declared void by raising the question at the proper time, if it should eventually elect so to do.”
In Titus v. Insurance Co., supra, the court, at page 419, says:
“When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach, and claim a forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result.”
Many cases are cited in approval of this rule. Indeed, it does not seem now to be questioned, but regarded as the settled law of *374 this state. This brings us to the question whether there was any evidence from which the jury might find that the right to cancel or forfeit the policy has been waived by the company. The testimony is undisputed, as the plaintiff was nonsuited when he rested his case. It has been seen from a statement of the facts that, before the proofs of loss were made to the company, it was in full possession of all of the facts on which it now seeks to avoid a recovery. The proofs of loss were presented and returned for cor- . rection because of the want of some information which the defendant wished supplied. They were corrected, returned.to the company, and received and filed. The assessment made for this and other losses was collected and receipted for on the “mortuary notice,” and no suggestion was made that the company claimed or intended to claim that it would cancel the policy or insist upon the forfeiture under either the application, the certificate or the constitution. It seems to me this is evidence, if not “ from which a waiver follows as a legal result,” which at least should have been submitted to the jury to pass upon as a question of fact. The company insisted upon its right to have proper proofs of loss, and the payment of the assessment only by virtue of its policy, and of its being in force. It then recognized the validity of the policy, and subjected the insured to trouble and expense after it knew of the facts which would entitle it to cancel the policy, and of the forfeiture now alleged, and it cannot now assert its invalidity. Titus v. Insurance Co., supra. This is, of course, on the theory that on a new trial the jury would find from all of the evidence that the facts here stated and claimed by the plaintiff from his proofs are the facts in the case.
In Roby v. Insurance Co., reported in 120 N. Y. 510, and 31 St. Rep. 560, the defendant company, after having knowledge of the facts upon which it is claimed a forfeiture, demanded of the insured further proofs of loss, as was its right under the policy of insurance, and the plaintiff complied with its demands, and furnished the required proofs. In deciding the case, the court says :
“The policy in question was void or valid as a whole. If any part was valid, it was all valid. The defendant could not enforce' any part without practically admitting that it was operative in all its parts. By demanding further proofs of loss, in fact and in , form it demanded that which it had contracted for, and thus attempted to enforce the contract in part. * * * After requiring performance from the insured, with knowledge of the facts, it could not refuse performánce on the ground that those facts had worked a forfeiture.”
And it was held that this fact constituted a waiver in law, and that the defendant could not insist upon a forfeiture.
In McNally v. Insurance Co., supra, the court say that:
“When an insurance company, with full knowledge of the facts constituting a breach of the condition or a warranty, requires the assured, by virtue of the contract, to do some act or incur some trouble or expense, the forfeiture is deemed to have been waived, as such requirement is inconsistent with the position that the contract has ceased to exist, and consistent only with the theory that *375 the obligations of the contract are still binding 'upon both parties.”
Numerous cases might be cited, but enough have been referred to to illustrate the rule that when the company, with full knowledge of the facts which would work a forfeiture of the policy if insisted on in time, requires the insured to perform his part of the contract, the company is then deemed to have waived its right to insist upon a forfeiture, and cannot on that ground avoid its contract obligation to pay the loss.
The counsel for the defendant, in his brief, concedes that the company, on the 28th and 29th of December, 1893, had knowledge that the chattel mortgage or bill of sale had been executed and filed; but he contends that the receipt of the money afterwards did not operate as a waiver, for the reason that it was simply a payment of a debt that had accrued prior to the loss, and while the policy was in full force, and that the defendant had the same right to receive it that it had to receive a payment of any other debt due it. The difficulty with this position is that the horse was killed on the 14th of December; that the “ mortuary call” and assessment was made on the 26th day of December, 1893, and included an assessment to pay the loss of this identical horse and others which had died before plaintiff’s horse was insured. Another answer is that the assessment was made only by virtue of the contract of insurance, which the plaintiff and defendant had entered into, and, if the contract was void, the company had no right to insist upon the payment of an assessment made under it, no matter for what debt or for what purpose it was made, unless it intended to waive the forfeiture and pay the loss. As the case stands before us, with the plaintiff’s evidence undisputed, we must hold that such was the intention of the company, and it did in law waive its right to cancel or forfeit the policy. The case of Robertson v. Insurance Go., 88 N. Y. 541, cited in the counsel’s brief, is an authority upon that proposition. Judge Earl lays down the rule which is here followed, but the reason it had no application in that case was that the insurance company did no act after forfeiture of the policy which could be construed into a waiver. The plaintiff in this case had possession of the horse after he bought it until the time it was killed. The horse was his in fact and in law, and no feason appears from the case why the company should not pay the amount for which it was insured. The exceptions, therefore, must be sustained, and a new trial granted, with costs to abide the •event of the action.